## Ira Coleman ROBERTS v. STATE of Arkansas

CR 73-20 497 S.W. 2d 666

Opinion delivered July 9, 1973
[Rehearing denied August 27, 1973.]

*Tackett, Moore, Dowd & Harrelson* and *James T. Gooch,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Charles A. Banks,* Asst. Atty. Gen., for appellee.

John A. Fogleman, Justice. This appeal comes from the conviction of Ira Coleman Roberts of the crime of grand larceny. Since one of his points for reversal is the contention that the evidence is not sufficient to support the verdict, we will state the evidence in the light most favorable to the state. The state's evidence was virtually uncontradicted.

The prosecuting witnesses in this case, James Peacock and Charles Peacock, are prosperous farmers from the vicinity of McCrory, Arkansas. They not only had farming operations, but also engaged in various other related and unrelated activities such as purchasing wet grain and operating a salvage business. Sometime in

1970 or 1971 Charles Peacock began having dealings with a man known to him as Bill Taylor, whose photograph was later identified as being that of Marshall May Powell. Taylor expressed interest in and knowledge about the Peacocks' grain storage facilities, and in June of 1971 the Peacocks said that he informed them that he could introduce them to individuals in Texarkana, Arkansas, who had large quantities of "wet grain" to sell for amounts substantially less than the prevailing market rate. However, Taylor told them that these individuals would deal only in cash. Based on this information, the Peacocks withdrew $50,000 in $100 bills, in spite of the suggestion of the two bankers from whom they obtained the money that they use cashier's checks. They proceeded to Texarkana, Arkansas, on June 2, 1971, where they met Taylor and appellant Roberts, who was introduced to them as "Doc" Wilson, at about 9:00 a.m. at a motel. In the introduction, Wilson was described as an associate who had been working with Taylor. The Peacocks said their journey left them extremely tired, so Taylor suggested they have a cup of coffee and invited them to a table already set up with a pot of coffee. At that time, Jim Peacock had $20,000 in his shirt and $30,000 was in Charles Peacock's boots. $3,000 was left under the seat of their car. Roberts then went to the motel office to register for rooms because, he said, they might be there for some time. It was shown that Roberts procured two rooms, one in the name of George E. Wilson, and one in the name of Eddie Driver, an employee of the Peacocks who accompanied them to Texarkana in a separate vehicle. Roberts (Wilson) then rejoined the Peacocks and Taylor in the cafe. Taylor did not drink any of the coffee. After finishing their coffee, the Peacocks became very sleepy and wanted to lie down and rest. Taylor offered them his room, the one which Wilson (Roberts) had just reserved, and all four went to that room. Appellant sent Driver to the other room, suggesting that he take a nap. Jim Peacock testified that after entering the room he and the elder Peacock lay on the two beds. He said that he felt real drowsy, carefree and irresponsible, and that, in walking, he felt like he was floating. He also testified that he remembers seeing appellant "kind of petting my dad and feeling sorry for him," and saying, "Mr. Peacock,

take it easy and relax." Charles Peacock testified similarly, and added that appellant helped him take off his boots. When the two Peacocks went to sleep, Charles still had the $30,000 in $100 bills in his boots and his car keys in his pocket, and Jim had $20,000 in $100 bills in his shirt. Upon awakening some four hours later, Jim Peacock, finding his shirt unbuttoned and money gone, awakened his father. They discovered that not only had Taylor and Wilson departed, but all their money was also missing and someone had left some aluminum pans, a wooden press, a quantity of paper, some of which had been cut to the size of currency, a black suitcase, and other paraphernalia in the room. Wet hotel towels were on the floor. Also, both Peacocks sensed a distinct odor characterized as being like "creosote dip." The Peacock car keys were on a table in the room.

When the Peacocks arrived at the motel, the elder Peacock parked their car next to the automobile Taylor had been driving when he came to the Peacock farm. Taylor was present and supervised the re-parking of the Peacock vehicle because Charles Peacock had parked without regard to the parking guidelines. Charles Peacock locked the car when he got out of it. It was locked after the disappearance of Taylor (Powell), Wilson (Roberts) and the Peacock currency. The Taylor vehicle had also disappeared.

An investigating police officer described the memory of the Peacocks as "very blurry" when he first interviewed them after they had given the alarm upon discovering the disappearance of Taylor and Wilson and their money. Appellant offered only two witnesses. One of them was a motel employee, who said that Charles Peacock had told her he did not want his room cleaned because he did not want to be disturbed in doing some paper work. He also asked her for some extra towels. A waitress testified that when the elder Peacock ordered sandwiches he smelled like creosote.

Appellant alleges only two points as error. We find no reversible error. Appellant first contends that the use by the state of a photograph of one Marshall May Powell

was reversible error. The photograph was used by the prosecution to establish the true identity of Bill Taylor and to connect the appellant with the other party to the alleged crime. Both Charles and Jim Peacock identified the person photographed as Bill Taylor and appellant as "Doc" Wilson. Eddie Driver also said that the photograph was of Bill Taylor. It served to show that both Powell and his alleged confederate were using fictitious or assumed names in their dealings with the Peacocks. Appellant takes issue with the fact that the state did not formally introduce this photograph into evidence, and argues that it was irrelevant. No objection was made to the identification of Bill Taylor made by the two Peacocks and Driver or to the testimony of two police officers who said that the man was actually Marshall May Powell. We do not see how this failure prejudiced the appellant in any way. Even if the photograph had been admitted and was irrelevant, the appellant has not demonstrated how he was prejudiced either by the state's failure to introduce it or by its claimed irrelevancy. The only suggestion of prejudice was that the testimony showed that the individual pictured was well known by the Arkansas State Police. There was no evidence to show how the officers became acquainted with this person, and we do not find any implication that these officers were acquainted only with criminals. Also, when the photograph was identified by the last witness for the prosecution, the appellant was apparently asked if he wanted it introduced. The record is silent as to any response by the appellant.

Appellant's other contention is that the verdict is not supported by substantial evidence. With this we also cannot agree. While the evidence was basically circumstantial, the recitation of the facts as gleaned from the testimony of the Peacocks is sufficient. The appellant was placed at the scene of the crime; his companion knew where the Peacock vehicle was parked; he was shown to have possession of the elder Peacock's boots which contained part of the stolen money; he took care to exclude Driver from the coffee table and the motel room where the Peacocks were; the use of aliases and the permissible inference that the coffee was "spiked," and the virtual exclusiveness of the opportunity of appellant and Taylor

to commit the theft, and the disappearance of the money, Powell, Roberts and the Powell car during the time the Peacocks were soundly napping were all circumstances from which the jury could have concluded that appellant was a participant in the crime. Circumstantial evidence is sufficient to support a criminal conviction. *Parker* v. *State,* 252 Ark. 1242, 482 S.W. 2d 822; *Lancaster* v. *State,* 204 Ark. 176, 161 S.W. 2d 201. The circumstances here meet the test as we have previously applied it. See *Dolphus* v. *State,* 248 Ark. 799, 454 S.W. 2d 88; *Lancaster* v. *State,* supra; *Jefferson* v. *State,* 89 Ark. 129, 115 S.W. 1140.

The judgment is affirmed.